C. CASE PERCY and Others, Respondents, *v.* ELIZABETH L. HUYCK and Another, Appellants.

Fourth Department, May 8, 1929.

*George P. Decker*, for the appellants.

*Hampton H. Halsey*, for the respondents.

SEARS, P. J. The plaintiffs are nephews and nieces of the defendant Elizabeth L. Huyck. The defendants are wife and husband. Frank T. Percy, who died on the 18th day of January, 1912, was a brother of the defendant Elizabeth and an uncle of the plaintiffs. He owned in his lifetime a house and lot known as No. 95 Flint street in the city of Rochester; also a piece of property on Reynolds street, which is referred to in the evidence and in certain exhibits as " the block." For many years before Mr. Percy's death, he and his sister, the defendant Elizabeth, had made their home together on premises at No. 21 Tracy street. The title to this Tracy street property was in the defendant Elizabeth, she having received title from June Lillie Losey by deed dated March 22, 1904.

On November 27, 1911, Mr. Percy was in failing health and was evidently considering the disposition of his property in view of his possible death in the near future. On that day he executed two deeds as grantor in which the defendant Elizabeth was named the grantee, one covering the Flint street property and the other the block on Reynolds street. Each piece of property was incumbered by a mortgage and each deed contained a clause that the conveyance was subject to the mortgage of which the payment was assumed by the grantee. The deeds were not delivered to the defendant personally, but Mr. Percy caused them to be recorded two days later. They eventually came into the hands of the

defendant Elizabeth, but not until sometime after the death of Mr. Percy.

On the afternoon of the 27th day of November, 1911, Frank T. Percy handed the defendant Elizabeth a sealed envelope and said, according to her testimony: " Don't open this unless I die. I have written down a few things as I see it. You may see it entirely different later." After the death of Frank T. Percy, and on the same day that he died, the defendant Elizabeth opened the sealed envelope and found in it a paper, which she produced upon the trial, reading as follows: " ROCHESTER, N. Y., *Nov.* 27–11.

" I give to my sister Mrs. Elizabeth Huyck my house and lot on Flint St. num. 95. My interest in house and lot on 21 Tracy St. In case she dies without having any children of her own she is to will this property to Frank and Leland Percy.

" My insurance money is to be used in paying my debts. I owe Charley Gaylord Five $500.00 and pay Minnie her money on the note she hold against me. What property I have left shall be equally divided among C. C. Percy, Harland Percy, Leland Percy, Franklyn Percy, Frances Barber, Katherine Barber, Arthur Barber. This property is not to be divided until ten years after my death.

" In case any one of these seven heirs should have a sickness of any account they can draw on this property for that expense without any loss to them in the final settlement.

" This block can be sold or traded for other property just as you see fit. If sold would prefer to have the money put out on a mortgage.　　　　　　　　(Signed)　F. T. PERCY."

On the 11th day of March, 1912, the defendant wrote to a half-sister, Mrs. Violetta Merritt, as follows:

" ROCHESTER, *Mch.* 11, 1912
" 21 Tracy St.

" DEAR LET.— While sick Frank realized he could not get well long before he passed away and I dreaded this for he had often said if anything should happen to me I should want you to look after my affairs and he therefore placed all his real estate in my hands and also requested me to settle all bills against him which I have done. In regard to his real estate he deeded everything to me his interest in the home on Tracy St. as we owned that together also a house and lot on Flint St. and the city block which he exchanged for the farm is to be divided among Martin's four boys and Minnie's two girls equally at any time I see fit to dispose of it for he left it all to my judgment he had a life insurance of $2,000, and it has taken that and a good deal more to settle his affairs."

Following the death of Frank T. Percy, the defendant Elizabeth entered upon the management of the properties described in the two deeds. In 1923 she sold the block on Reynolds street taking in exchange some cash, another piece of real estate, the conveyance of which ran to both defendants, and a mortgage, the assignment of which was also made to both defendants. She has also mortgaged the Tracy street property. The title to the Tracy street property, subject to such mortgage, and to the Flint street property is, however, apparently still vested in her.

The rights of the plaintiffs in the real property which was owned by Frank T. Percy at the time of the making of the deeds on November 27, 1911, and in the proceeds arising from the sale or mortgage of any of such property, are to be determined in this action.

The learned trial justice at Special Term has held that Frank T. Percy was the owner of a half interest in the Tracy street premises. This is based upon the communication from Frank T. Percy to his sister which he handed to her in the sealed envelope and which she accepted and produced upon the trial, and the admission contained in the letter to Mrs. Merritt of March 11, 1912. This finding was justified by these exhibits. (*Sinclair* v. *Purdy,* 235 N. Y. 245.)

The writing signed by Frank T. Percy, handed to Elizabeth Huyck in the sealed envelope, was sufficient to release to her his interest in the Tracy street property, but the release was subject to a condition, viz., that in case the defendant died without having any children of her own, she was to will the interest thus released to the plaintiffs Frank and Leland Percy. She accepted the release of her brother's interest upon this condition. Although she is not shown to have known of the release or the condition until after his death, it was not then too late to have declined to accept the release. Having accepted it, she is bound to fulfill the condition. It matters little what the nature of the interest of Frank and Leland Percy in this one-half interest is. When the time comes, if the defendant Elizabeth should have no children of her own, the right of Frank and Leland Percy to a one-half interest in the Tracy street property will be legally enforcible. To that end the defendant should be required to secure the release of the interest of Frank and Leland Percy from the lien of the mortgage which she has placed upon it or by satisfactory security to assure to Frank and Leland Percy the release of the mortgage upon their future interest.

The learned Special Term also held that Frank and Leland Percy acquired an interest in the Flint street property. It is doubtful whether Frank T. Percy intended to give the Flint street

property to the defendant Elizabeth upon a condition similar to that imposed upon her in relation to the Tracy street property. The last sentence in the 1st paragraph of the instrument signed by Frank T. Percy may refer to the one-half interest in No. 21 Tracy street alone, or to both the interest in the Tracy street property and to the house and lot at No. 95 Flint street. The fact that a single paragraph of the instrument includes the subject of both properties tends to show that the writer meant that both properties were to pass to Frank and Leland Percy, if his sister had no children. The fact that there is no separate statement of gift to Mrs. Huyck of the interest in the property on Tracy street tends in the same direction. On the other hand, the use of the grammatical singular in the phrase " this property " tends in the other direction. No expression in any of the exhibits written by the defendant Elizabeth refers to any obligation in relation to the Flint street property. In this state of the evidence the conclusion that a future interest in the Flint street property was intended to be given to Frank and Leland Percy cannot be sustained.

The most important question in this case relates to the interest in the block. There can be no doubt that Frank T. Percy intended his sister, Elizabeth Huyck, to take no beneficial interest in the block. By the deed to her and the statement inclosed in the sealed envelope, he sought to divide the property among seven nephews and nieces, the six plaintiffs, and Arthur Barber, a nephew who predeceased Frank T. Percy. The right intended to be given to the defendant Elizabeth in respect to the property was merely one of management, with an implied power of sale and reinvestment. She recognized a fiduciary relationship in her letters to her nephews and nieces. Although the defendant Elizabeth is not shown to have had knowledge of the deeds to her until after her brother's death, all parties to this action rely on the deeds as legal transfers of title *inter vivos*. Delivery to some third person on behalf of the defendant Elizabeth was sufficient (*Saltzsieder* v. *Saltzsieder*, 219 N. Y. 523; *Diefendorf* v. *Diefendorf*, 132 id. 100) and may be presumed from the recording. The title passed to Elizabeth presumably as of the date of the deeds and on that same day and as a part of the same transaction the grantor signed and delivered to his sister the instrument qualifying her apparent legal title. Deeds and qualifying instrument must be read together. Under such circumstances it cannot be said that the instrument delivered in the sealed envelope was delivered subsequently to the passing of the legal title. The admissions of the defendant Elizabeth contained in her letter to Mrs. Merritt and in the letters to her nephews and nieces are additional proof of her fiduciary position. The

writings taken together fully support the finding of a trust relationship on the part of the defendant Elizabeth toward. the plaintiffs. (*Hutchins* v. *Van Vechten*, 140 N. Y. 115; *McKenna* v. *Meehan*, 248 id. 206.) The plaintiffs are entitled, however, only to a six-sevenths interest in this property. The devolution of the interest of the deceased Arthur Barber upon his death is not before us. The plaintiffs are entitled to an accounting as to the management of the block, the rent received, and the proceeds of its sale from the time the defendant Elizabeth took possession of it shortly after the death of her brother to the date of the accounting.

Two other questions need consideration.

Was there an invalidity in the creation of interests in relation to the block because of Frank T. Percy's direction that the property was not to be divided until ten years after his death? We think not. We read the instrument signed by Mr. Percy, as well as the letters of the defendant Elizabeth, as intending to vest an immediate legal interest in the plaintiffs and Arthur Barber, and not to establish an express trust as provided by section 96, subdivision 3, of the Real Property Law. A trust does not suspend the power of alienation unless it is one of those authorized by subdivisions 3 and 4 of section 96. (Real Prop. Law, § 103.) While the rights and duties of the defendant Elizabeth do not fall within those of a trustee as specified in any of the provisions of section 96 of the Real Property Law, her right of management and sale are valid as powers in trust. (Real Prop. Law, § 99.) The rule against the suspension of the power of alienation is, therefore, not violated. (Real Prop. Law, § 42; *Henderson* v. *Henderson*, 113 N. Y. 1.)

Was the deposition of the defendant Elizabeth taken before trial at the instance of the plaintiffs and offered in evidence by the defendants improperly denied receipt under the objection of the plaintiffs? Upon the trial instead of reading the deposition as provided in section 303 of the Civil Practice Act, the defendants' counsel offered the document in evidence. This, we think, was an informal offer to read it. The plaintiffs' counsel thereupon objected, not to the form of the offer, but generally to the deposition as incompetent, immaterial and irrelevant, and also upon the ground that the witness whose deposition it was, was incompetent to answer the questions and that her testimony was incompetent because it involved a personal transaction between herself and the decedent. The deposition was thereupon excluded. The general objection was doubtless unavailing. The specific objection under section 347 of the Civil Practice Act we may treat as being interposed to each and all of the questions put to the defendant Elizabeth when the deposition was taken. An examination of the deposition itself has

convinced us that there is no substantial evidence beneficial to the defendant in the deposition which the deponent was not incompetent to give under the provisions of the section last mentioned. Notwithstanding the fact that the deposition had been taken by the plaintiffs, it was still open to them to object under section 347 of the Civil Practice Act to its being read. (Civ. Prac. Act, § 305; *Bambauer* v. *Schleider*, 176 App. Div. 562; *Cudlip* v. *New York Evening Journal Publishing Company*, 180 N. Y. 85.) No reversible error occurred in this ruling.

The interlocutory judgment should be modified in accordance with this opinion and, as modified, affirmed, without costs. Certain findings of fact and conclusions of law should be reversed and disapproved and new findings made in accordance herewith.

All concur, except TAYLOR, J., who dissents as to the Flint street property only, and votes to affirm the Special Term as to its disposition of that property. Present — SEARS, P. J., CROUCH, TAYLOR, EDGCOMB and CROSBY, JJ.

Interlocutory judgment modified in accordance with the opinion and as modified affirmed, without costs of this appeal to either party. Certain findings of fact and conclusions of law disapproved and reversed and new findings and conclusions made.